IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

INTERNATIONAL SWAMINARAYAN )
SATSANG ORGANISATION, )
 )
                Plaintiff, )   Civil Action No. 3:19-cv-00744-MHL
 )
v. )
 )
ATANE ENGINEERS, ARCHITECTS )
AND LAND SURVEYORS, D.P.C., )
 )
and )
 )
ATANE ENGINEERS, INC., )
 )
 )
                Defendants. )

## COMPLAINT

Plaintiff International Swaminarayan Satsang Organisation ("ISSO"), by counsel, states as follows for its Complaint against Atane Engineers, Architects and Land Surveyors, D.P.C. ("Atane") and Atane Engineers, Inc. f/k/a HAKS Engineers, Inc. ("HAKS") (together, "Defendants"):

### Introduction

1.  ISSO is a religious organization that exists for the purpose of preserving and promoting the Hindu faith. As part of its mission, beginning in 2017, ISSO undertook to develop a spiritual and cultural retreat center in Virginia known as Devasya.

2.  ISSO purchased more than 500 acres of land, part of which is located in Caroline County, Virginia, and part of which is located in King and Queen County, Virginia.

1

3.     ISSO planned to fund the design and construction of the project entirely with donations from its supporters around the world.

4.     On or around March 23, 2018, ISSO entered into a contract with Defendant HAKS for the engineering and design services necessary to complete the project.  HAKS knew at the time of contracting that time was of the essence and that ISSO would be irreparably harmed if the project was not completed on time.  The contract was memorialized in a letter agreement signed on behalf of HAKS by its Senior Vice President Francisco Ruela and on behalf of Plaintiff by its Executive Director Ankit Patel.  A copy of the letter agreement is attached hereto as Exhibit A.

5.     The letter agreement includes an express written schedule that makes it clear that construction was to be completed in 17 months.  Had this schedule been followed, construction would have been completed by the end of August 2019.  Further, the letter agreement, which was authored by HAKS, expressly states as follows: "It is also our understanding that Devasya is looking to develop the site into 2 phases and would like to start the construction of the Temple and bridge late summer 2018 to have full functional facility by late spring of 2019."

6.     Despite this clear understanding, construction has yet to commence.  Defendant Atane acquired HAKS in or around October 2018, and through a series of errors, omissions, misrepresentations, and blatant falsehoods, Defendants have taken ISSO's money and failed to perform the contract or even make any significant progress.  What little work Defendants have done has been substandard, and ISSO has been forced to terminate its contract with Defendants and engage another engineering company—at great expense.

## Parties

7. ISSO is a New Jersey corporation with its principle place of business in New Jersey.

8. Defendant Atane is a New York domestic professional corporation with its principle place of business in New York.

9. Defendant HAKS is a Maryland corporation with its principle place of business in Maryland. At the time of contracting, in March of 2018, HAKS' full name was HAKS Engineers, Inc. On September 7, 2018, HAKS filed an amendment to its corporate charter to change its name to Atane Engineers, Inc. On information and belief, Atane now owns or controls HAKS.

## Jurisdiction and Venue

10. The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because ISSO is a citizen of a different state than Defendants, and the amount in controversy exceeds $75,000.

11. The Court may exercise *in personam* jurisdiction over Defendants pursuant to Fed. R. Civ. P. 4(k)(1) because they each:

a. Have transacted business in the Commonwealth of Virginia as contemplated by Code of Virginia § 8.01-328.1(1);

b. Have contracted to supply services or things in the Commonwealth as contemplated by Code of Virginia § 8.01-328.1(2); and

c. Have caused tortious injury by an act or omission outside the Commonwealth and they both regularly do or solicit business, engage in other persistent courses of conduct, and/or

derive substantial revenue from goods used or consumed or services rendered, in this Commonwealth as contemplated by Code of Virginia § 8.01-328.1(4).

12. Venue is proper in this Court pursuant to 28 U.S.C. 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District, and a substantial portion of the property that is the subject of the action is situated in this District. Venue is also proper in this district pursuant to 28 U.S.C. § 1391(b)(1) because defendants are deemed to reside in this district by operation of 28 U.S.C. 1391(c)(2).

## Facts

13. In January 2018, Ankit Patel and Devraj Keray, representing ISSO, met with Husam Ahmad and Jayesh Patel of HAKS to discuss the Devasya project. At that time, Husam Ahmad was the CEO and principal owner of HAKS. At that meeting, Husam and Jayesh assured Ankit and Devraj that HAKS staff had a deep knowledge of Indian architecture, and that those professionals would be performing the work on the Devasya project if ISSO chose to contract with HAKS. Those assurances were untrue. Husam and Jayesh further assured Ankit and Devraj that HAKS would complete the agreed work in a timely fashion, and that ISSO's required timeline, which included the completion of construction by late spring 2019, would be met. ISSO relied on these representations when it decided to contract with HAKS.

14. As previously recited, on March 23, 2018, ISSO contracted with HAKS to complete the design and engineering work in a timely fashion such that the project would be completed within 20 months of the time of contracting.

15. HAKS also agreed in the letter agreement that: "HAKS will prepare all application documents for the Planning and Zoning Permits for both King and Queen and Caroline County."

16. Prior to entering into the contract with HAKS, ISSO was introduced to engineer Francisco Ruela and Project Manager Manuel Millan. ISSO was assured by those individuals that they would be managing work on ISSO's project.

17. From the inception of the project, HAKS failed to perform as promised and made a series of continued misrepresentations. On August 22, 2018, Ankit Patel, on behalf of ISSO, wrote to Manuel Millan and inquired about the status of the project. Millan wrote back a few minutes later and assured Ankit that all was proceeding apace. The response e-mail contained the following representation: "We have enough information on the site plan to address the counties. Once the final layouts are approved we can present to the local authorities and move out of conceptual. This coordination for these meetings is happening in the next week upon approval." Those representations were not true, and Atane knew they were not true at the time.

18. In September 2018, ISSO learned that both Ruela and Millan had left HAKS.

19. Also in September 2018, ISSO learned that HAKS CEO Husam Ahmad had been indicted in New York and charged with illegally funneling money to Mayor Bill de Blasio's campaign in return for lucrative New York City contracts. Ahmad's brother, Shahid Akhtar, CFO of HAKS, also was indicted. Both subsequently entered into plea agreements. Those plea agreements required both brothers to step down from the company and divest their ownership interests in HAKS. ISSO representatives Ankit Patel and Devraj Keray requested an emergency meeting with HAKS and written assurances that their project would be completed on time.

20. On October 30, 2018, Alberto Villaman, who had then succeeded to the CEO role, wrote to Devraj Keray, Ankit Patel, and Jayesh Patel, and assured them that the project was on track and would be completed on the original schedule:

> As requested, please find herein a status update for ATANE Engineers, Architects and Land Surveyors, DPC. Please note that Joe Michiels, P.E. has taken charge of

the project as the Project Manager and Designer. We have recently added several other staff members including Walter Fuller, RA as a Vice President and Lead Architect with ATANE. We do acknowledge that because of an internal reorganization, several staff members which were originally assigned to the contract are not available. However, with the noted staff changes **we promise that the Devasya Project will stay on schedule as planned originally**.

On information and belief, those representations were also untrue when made, and Atane knew it.

21. ISSO also learned around the same time that Atane had assumed control of and/or merged with HAKS. From that time forward, there was no discernable difference between HAKS and Atane as far as ISSO could tell, and Atane assumed responsibility for HAKS' duties under the contract.

22. On information and belief, Atane was in a state of freefall because of the indictment of the HAKS senior leaders, and the company was willing to say anything in order to keep ISSO's business.

23. In 2017, prior to the formation of the contract between ISSO and HAKS, ISSO engaged counsel and successfully petitioned the Caroline County Board of Supervisors for zoning approval. This was clearly communicated to HAKS prior to contracting.

24. On October 5, 2018, Joe Michiels, P.E., who had been given the role of Project Manager for Atane Consulting, contacted ISSO's zoning counsel, M. Ann Neil Cosby, and advised that Atane was now fulfilling the duties HAKS had undertaken in its contract with ISSO. Michiels advised that the design of the retreat had been modified and asked what would be required to get zoning approval—not knowing that the zoning had already been approved. Michiels demonstrated utter ignorance of Virginia law regarding zoning and project approval.

25. On October 25, 2018, Michiels sent ISSO a revised "Conceptual Site Plan." That plan did not satisfy the requirements of the Caroline County or King and Queen County

ordinances for site plan submittal.  Zoning counsel explained these deficiencies to Michiels, and a meeting was scheduled with Caroline County to discuss scope of proposed changes.

26. On November 27, 2018.  Michiels met, in Virginia, with Cosby, Caroline County Director of Planning Mike Finchum, Caroline County building official Kevin Wightman, and Caroline County Fire Chief Jason Loftus.  Michiels, who was Atane's representative, was advised regarding the deficiencies of the "Conceptual Site Plan," and an official present instructed him on the additional information that would be required before Caroline County could approve it.  Atane was also advised by staff to promptly contact the Virginia Department of Environmental Quality (DEQ) to coordinate DEQ's stormwater management approval process with Caroline County's site-plan review.  On information and belief Atane never did so.

27. On November 27, 2018, Michiels told ISSO that the site plan would be completed within a few weeks.  That representation was false, and on information and belief, Atane never intended to produce the site plan "in a few weeks."

28. On December 27, 2018, Cosby sent an e-mail to Michiels inquiring about the status of the site plan.  Cosby also inquired about how Atane intended to avoid "Resource Protection Areas" (RPAs), which are strictly regulated by the Virginia Chesapeake Bay Preservation Act (CBPA).

29. There was no response until January 9, 2019, when Michiels finally responded by e-mail, stating he was "just getting around to this now, but we're moving through the design plan process."  ISSO learned that Atane had failed to delineate the wetlands on the site as required by both counties for site plan submission.  Michiels also stated that Atane intended to avoid the RPAs, but would "apply for disturbance permits as part of our approval process."  Under applicable state and local law, a "land disturbing" permit cannot authorize development in an

7

RPA.  ISSO, via Cosby, called and left message for Atane to express concern about this error and about Atane's apparent ignorance of Virginia law, but Atane did not respond.

30. On February 27, 2019, Ken Mangum, an Atane employee, contacted ISSO through Cosby.  Mangum stated that he was now in charge of the project.  He advised that the target date for the site plan was March 18, 2019.  Mangum expressed complete ignorance of the CBPA requirements and of the two counties' site-plan requirements, including the environmental features that must be shown on a final site plan, such as delineated wetlands.  On February 28, 2019, Cosby sent Mangum by e-mail the King and Queen County CBPA ordinance with relevant sections highlighted and the portion of the delineated wetlands that a prior engineering firm had conducted.

31. In March 2019, ISSO learned that Michiels was no longer employed by Atane and that David Nickle had been assigned as the new project manager.  Atane had still not produced a site plan.  In mid-March, Nickle called Cosby and left a message stating that he had been assigned to the project and had questions related to site plan.  On March 27, 2019, Cosby spoke to Nickle who amazingly asked Cosby where the documents and plans related to the site work were.  Cosby advised that Atane was responsible for preparing site plan.  Nickle told Cosby that Atane had no internal records and nothing for him to go by.  He criticized how the matter had been handled internally by his own company, and said that "nobody knows what they are doing" and that ISSO had actually been sold design features that are not permitted in Virginia including a type of septic system and a process for the reuse of "gray" water.

32. In early April 2019, ISSO representatives requested a meeting, which was held at Atane's New York office.  At that meeting, Nickle stated that Atane was unaware of any local ordinances that would affect the project or site plan.

33. On April 17, 2019, ISSO representatives participated in a conference call with Atane employees to discuss the lack of progress on the project. The next day, without prior notice, Ankit Patel and Devraj Keray received an e-mail from Nickle, advising that due to "continuing developments here with our current corporate situation," Atane management had dismissed him and that he would no longer be working on the project. Nickle further advised in a follow-up e-mail that:

> I was notified last Friday by email on my way home. I do not know why this was not mentioned in your meeting.
>
> However, I made certain assurances to you in our meeting that I will not be able to fulfill and I wanted to notify you.
>
> I am leaving them with a plan and work scopes to perform the studies that were not previously performed but are required for a Site Plan submittal.

34. In August 2019, Plaintiff learned that Jayesh Patel had been terminated by Defendants, further disrupted what little continuity remained in the business relationship.

35 On September 17, 2019, Plaintiff sent Atane a letter terminating the contract. A copy of that letter is attached hereto as Exhibit B.

36. To date ISSO has paid Defendants in excess of $311,270. No work has been performed on site, and no design documents have been delivered. In its termination letter, ISSO requested that Defendants deliver all documents related to the project to ISSO, but nothing has been received.

37. At the time the parties entered into the contract, HAKS was aware that ISSO intended to finance the transaction via donations, that it was dependent on the good will of its supporters, and that ISSO would be irreparably harmed by any delay in the project. Under the circumstances, the parties contemplated at the time of contracting that ISSO would suffer consequential damages if HAKS did not perform the contract as promised.

9

38. Defendants repeatedly promised that the project would be completed by the end of August 2019. Defendants never intended to keep that promise and instead took advantage of ISSO's patience, stringing ISSO along for 18 months. Defendants have produced nothing, and with the completion deadline having passed, ground has not been broken.

39. ISSO has been greatly harmed. Donations to support the Devaysa project have fallen off sharply as a direct result of Defendants' actions, and ISSO is now forced to seek bank financing in order to fund the project.

40. Accordingly, ISSO comes before this Court seeking justice and compensation for the harm inflicted upon it by Defendants.

## Count I:  Breach of Contract

41. ISSO incorporates paragraphs 1–40 as if fully stated herein.

42. A contract existed between ISSO and HAKS for design and engineering services related to the construction of the Devasya project.

43. Defendant Atane assumed the duties under the contracted that had been undertaken by HAKS.

44. ISSO fully performed the contract.

45. Defendants breached the contract by failing to complete the required deliverables, by failing to file a site plan with the applicable counties, and by failing to complete the project on time.

46. ISSO has been harmed by Defendants' breach and is entitled to compensatory and consequential damages.

## Count II:  Fraud

47. ISSO incorporates paragraphs 1–46 as if fully stated herein.

48.     As set forth more fully above, Defendants made numerous false statements to ISSO in the course of dealing between the parties.  Defendants misrepresented their capabilities, staffing, experience, and ability to perform the contract.

49.     Defendants, through their agents, repeatedly stated that they would complete the project on time, but at the time those statements were made, Defendants knew they could not keep those promises and did not intent to do so.

50.     ISSO relied on Defendants' false representations to its detriment.  ISSO could have hired a different firm as an initial matter, or it could have canceled the contract at an earlier point and hired another engineering firm, but ISSO reasonably believed and relied on Defendants' assurances.

51.     As a result, ISSO has been harmed and is entitled to damages.

### Count III: Violation of the Virginia Consumer Protection Act, Va. Code § 59.1-204

52.     ISSO incorporates paragraphs 1–51 as if fully stated herein.

53.     ISSO is a "religious body" as contemplated by Code of Virginia § 59.1-198.

54.     The contract between the parties is a "Consumer Transaction" as defined by Code of Virginia § 59.1-198, the definition of which includes: "Transactions involving the advertisement, sale, lease, or license, or the offering for sale, lease or license, of goods or services to a church or other religious body."

55.     Defendants have violated Code of Virginia § 59.1-204(14) which prohibits: "Using any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction."

56.     As described in detail above, Defendants made numerous false promises, false pretenses, and misrepresentations over the course of the parties' dealings, including, among other

11

things, repeated false promises about when the project would be completed, who would be working on it, and the experience and capabilities of Defendants relevant to the work contemplated in the contract.

57. Defendants violations of Code of Virginia § 59.1-204(14) were willful.

58. ISSO has been harmed as a result of these violations and is entitled to treble damages and attorneys' fees as contemplated in Code of Virginia § 59.1-204 (A) and (B).

WHEREFORE, ISSO respectfully prays that the Court award it damages, treble damages, attorneys' fees, and such other and further relief as justice may require.

ISSO DEMANDS TRIAL BY JURY OF ALL ISSUES SO TRIABLE.

Dated: October 11, 2019  Respectfully Submitted,

/s/ *Matthew Devane Fender*
Matthew Devane Fender (VSB No. 76717)
E-mail: mfender@mcguirewoods.com
J. Patrick McNichol (VSB No. 92699)
E-mail: pmcnichol@mcguirewoods.com
McGuireWoods LLP
800 E. Canal Street
Richmond, VA 23219
Tel: (804) 775-1000
Fax: (804) 775-1061

*Counsel for International Swaminarayan Satsang Organisation*