PIN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

INTERNATIONAL SWAMINARAYAN
SATSANG ORGANISATION,

          **Plaintiff,**

v.                                                                                                                    **Civil Action No. 3:19cv744**

ATANE ENGINEERS, ARCHITECTS
AND LAND SURVEYORS, D.P.C.,
*et al.*,

          **Defendants.**

**MEMORANDUM OPINION**

This matter comes before the Court on Defendants Atane Engineers, Architects and Land Surveyors, D.P.C. ("AEDPC") and Atane Engineers, Inc.'s ("AEI," and collectively with AEDPC, "Atane") Motion to Dismiss (the "Motion to Dismiss"). (ECF No. 11.) Plaintiff International Swaminarayan Satsang Organization ("International") responded, (ECF No. 13), and Atane replied, (ECF No. 14). This matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. The Court exercises jurisdiction pursuant to 28 U.S.C. § 1332(a).[1] For the reasons that follow, the Court will deny the Motion to Dismiss.

---

[1] "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1). International is a citizen of New Jersey, AEDPC is a citizen of New York, AEI is a citizen of Maryland, and the Complaint alleges damages exceeding $75,000. The disputed contract involves the development of 500 acres of land in Caroline County and King & Queen County, Virginia.

## I. Factual and Procedural Background

A.     **Factual Background**[2]

International, "a religious organization that exists for the purpose of preserving and promoting the Hindu faith," purchased more than 500 acres of land "to develop a spiritual and cultural retreat center in Virginia known as Devasya."[3] (Compl. ¶¶ 1–2, ECF No. 1.) International's Complaint arises out of "a series of errors, omissions, misrepresentations and blatant falsehoods," arising from "[Atane] tak[ing International's] money and fail[ing] to perform the contract or even mak[ing] any significant progress." (*Id.* ¶ 4.)

In January 2018, representatives from International and AEI[4] met to discuss the Devasya project. (*Id.* ¶ 13.) At the meeting, the CEO and principal owner of AEI assured International that AEI "would complete the agreed work in a timely fashion, and that [International's] required timeline, which included the completion of construction by late spring 2019, would be met." (*Id.*) International alleges that it relied on these representations when it decided to contract with AEI. (*Id.*)

---

[2] For the purpose of the Rule 12(b)(6) Motion to Dismiss, "a court 'must accept as true all of the factual allegations contained in the Complaint' and 'draw all reasonable inferences in favor of the plaintiff.'" *Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty., Md.*, 684 F.3d 462, 467 (4th Cir. 2012) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus.*, 637 F.3d 435, 440 (4th Cir. 2011)).

[3] International refers to the cultural retreat center as both "Devasya" and "Devaysa" in its Complaint and Response to the Motion to Dismiss. (*See* Compl. ¶ 39; Resp. Mot. Dismiss 4, ECF No. 13.) Based on the Letter Agreement, attached to International's Complaint, the Court will utilize the former spelling throughout this Memorandum Opinion. (*See* Compl. Ex. A "Letter Agreement" 1, ECF No. 1-1.)

[4] Around October 2018, AEDPC merged with AEI, and AEDPC assumed responsibility for AEI's duties under the contract with International. (Compl. ¶ 21.)

2

Around March 23, 2018, over three months later, "[International] entered into a contract with [AEI] for the engineering and design services necessary to complete the [Davasya] project." (*Id.* ¶ 4.) The Parties "memorialized" the contract between them "in a [L]etter [A]greement signed on behalf of [AEI] by its Senior Vice President Francisco Ruela and on behalf of [International] by its Executive Director Ankit Patel." (*Id.*) International states that AEI knew that "time was of the essence and that [International] would be irreparably harmed if the project was not completed on time." (*Id.*) International maintains that the Letter Agreement itself affirms that "construction was to be completed in 17 months." (*Id.* ¶ 5.) Specifically, the Letter Agreement, authored by AEI, expressly acknowledged the timeline, saying "[i]t is also our understanding that Devasya is looking to develop the site into 2 phases and would like to start the construction of the Temple and bridge late summer of 2018 to have a full functional facility by late spring of 2019." (*Id.*; Compl. Ex. A "Letter Agreement" 1, ECF No. 1-1.)

After the formalization of the Letter Agreement, AEI "failed to perform as promised and made a series of continued misrepresentations." (Compl. ¶ 17.) "On September 17, 2019, [International] sent Atane a letter terminating the" Letter Agreement and "engage[d] another engineering company—at great expense."[5] (*Id.* ¶¶ 6, 35; *see* Compl. Ex. B "Termination Letter" 1, ECF No. 1-2.) International "has paid [Atane] in excess of $311,270" and "[n]o work has been performed on site, and no design documents have been delivered." (Compl. ¶ 36.)

International contends that Atane "was aware that [International] intended to finance the transaction via donations, that it was dependent on the good will of its supporters, and that

---

[5] In the Complaint, International describes many communications that occurred over the course of several months between its employees and employees at Atane. (*See, e.g.*, Compl. ¶¶ 20, 24, 33.) Because these communications do not affect the Court's analysis on the instant Motion to Dismiss, the Court omits the details of them here.

3

[International] would be irreparably harmed by any delay in the project." (*Id.* ¶ 37.)

International asserts that "[d]onations to support the [Devasya] project have fallen off sharply as a direct result of [Atane's] actions, and [International] is now forced to seek bank financing in order to fund the project." (*Id.* ¶ 39.)

### B. Procedural Background

International brings a three-count Complaint, alleging breach of contract ("Count I"); fraud ("Count II"); and a violation of the Virginia Consumer Protection Act, Va. Code § 59.1-204[6] ("Count III"). (*Id.* ¶¶ 45, 48, 56.) Each of International's claims arise from Atane's failure to complete the construction of Devasya in compliance with the Letter Agreement and Atane's false promises, which International relied on to its detriment. (*Id.* ¶ 38.) International asserts that Atane's breach of contract, fraudulent actions, and violation of the Virginia Consumer Protection Act entitles it to damages for the harms suffered. (*Id.* ¶¶ 46, 51, 58.) International seeks "damages, treble damages, [and] attorneys' fees."[7] (*Id.* 12.)

Atane moves to dismiss all three counts pursuant to Federal Rule of Civil Procedure 12(b)(6).[8] (Mot. Dismiss 1, ECF No. 11.) In support of the Motion to Dismiss, Atane contends

---

[6] In pertinent part, section 59.1-204 of the Virginia Code provides:

> A. Any person who suffers loss as the result of a violation of this chapter shall be entitled to initiate an action to recover actual damages, or $500, whichever is greater. If the trier of fact finds that the violation was willful, it may increase damages to an amount not exceeding three times the actual damages sustained, or $1,000, whichever is greater.

Va. Code. § 59.1-204.

[7] Section 59.1-204(B) of the Virginia Code states "Notwithstanding any other provision of law to the contrary, in addition to any damages awarded, such person also may be awarded reasonable attorneys' fees and court costs." Va. Code § 59.1-204(B).

[8] Rule 12(b)(6) allows dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

4

that "[International] seeks to assert claims under . . . a contract to which it is a stranger" and absent any contractual rights, International "can assert no common law nor statutory fraud claims related to Devasya's contractual relationship with [Atane]." (Mem. Supp. Mot. Dismiss 1, 7, ECF No. 12.) International filed a response and Atane replied.

## II. Standard of Review: Rule 12(b)(6)

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a Complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). To survive Rule 12(b)(6) scrutiny, a Complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief.") Mere labels and conclusions declaring that the plaintiff is entitled to relief are not enough. *Twombly*, 550 U.S. at 555. Thus, "naked assertions of wrongdoing necessitate some factual enhancement within the Complaint to cross the line between possibility and plausibility of entitlement to relief." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted).

A Complaint achieves facial plausibility when the facts contained therein support a reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 556; *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009). This analysis is context-specific and requires "the reviewing court to draw on its judicial experience and common sense." *Francis*, 588 F.3d at 193 (citation omitted). The Court must assume all well-pleaded factual allegations to

be true and determine whether, viewed in the light most favorable to the plaintiff, they "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 676–79; *see also Kensington*, 684 F.3d at 467 (finding that the court in deciding a Rule 12(b)(6) motion to dismiss "'must accept as true all of the factual allegations contained in the Complaint' and 'draw all reasonable inferences in favor of the plaintiff'" (quoting *Kolon Indus.*, 637 F.3d at 440)).

### III. Analysis

#### A. Legal Standard: Principles of Contract Interpretation Under Virginia Law

The principles governing contract interpretation in the Commonwealth of Virginia are well established. *Wood v. Symantec Corp.*, 872 F. Supp. 2d 476, 481 (E.D. Va. 2012). "Under Virginia law, '[c]ontracts are construed as written, without adding terms that were not included by the parties.'" *Harris v. Mariner Fin. LLC*, No. 3:18cv588, 2019 WL 4060336, at *7 (E.D. Va. Aug. 28, 2019) (quoting *TM Delmarva Power, L.L.C. v. NCP of Va., L.L.C.*, 557 S.E.2d 199, 200 (Va. 2002)). When the language of a contract is "clear and unambiguous, the contract must be construed according to its plain meaning." *Parikh v. Family Care Ctr., Inc.*, 641 S.E.2d 98, 100 (Va. 2007); *see also Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 405 (4th Cir. 1998) ("Virginia strictly adheres to the 'plain meaning' rule, entitling the parties to rely on the express terms of the written agreement"). "Importantly, '[w]ords that the parties used are normally given their usual, ordinary, and popular meaning.'" *Chesapeake Bay Enterprises, Inc. v. Chesapeake Tr.*, No. 3:15cv35, 2015 WL 5786831, at *3 (E.D. Va. Sept. 30, 2015) (quoting *D.C. McClain, Inc. v. Arlington Cty.*, 452 S.E.2d 659, 662 (Va. 1995)). "No word or clause in the contract will be treated as meaningless if a reasonable meaning can be given to it, and there is a presumption that the parties have not used words needlessly." *Id.*

Where possible, the "court must read the contract as a single document, the meaning of which is gathered from all its associated parts when assembled as the unitary expression of the agreement of the parties." *First Am. Title Ins. Co. v. Seaboard Savs. & Loan Ass'n*, 315 S.E.2d 842, 845 (Va. 1984) (internal citations omitted). Courts must look to "the intention of the parties as expressed by them in the words they have used, and . . . are bound to say that the parties intended what the written instrument plainly declares." *Meade v. Wallen*, 311 S.E.2d 103, 104 (Va. 1984) (internal citations omitted).

Under Virginia case law "a misnomer in a corporate name does not invalidate a contract when it is clear what corporation the parties intended . . . ." *Blueridge Gen., Inc. v. Fanton*, 85 Va. Cir. 1, 2 (2011) (quoting *Lataif v. Commercial Indus. Constr., Inc.*, 223 Va. 59 (1982)). "The misnomer of a corporation does not affect the validity of a contract made by it. Similarly, where the name or description is erroneous but there is no reasonable doubt as to the person who was intended to be named or described, the mistake will not defeat a bequest." 4B M.J. Corporations § 37 (internal citations omitted).

### B. The Court Will Deny Atane's Motion to Dismiss Because the Letter Agreement Shows that International Constitutes a Party to the Contract

Atane seeks to dismiss International's claims because International's absence from the Letter Agreement prohibits it from having the requisite contractual privity to enforce the Letter Agreement against Atane. However, for three reasons, the Court concludes that International constitutes a party to the Letter Agreement. First, the allegations in the Complaint show that Devasya is the name of the project that International undertook, not a separate entity from International at the time of the Letter Agreement. Second, International's Executive Director signed the Letter Agreement on behalf of International. Third, under Virginia law, the Parties'

reference to Devasya in the contract does not preclude the Court's conclusion that International constitutes a party to the Letter Agreement.

First, based on the allegations in the Complaint, the Court will not consider Devasya a separate entity from International because it merely reflects the name of the project that International chose to undertake. When deciding a Rule 12(b)(6) Motion to Dismiss,[9] the Court must accept as true all well-pleaded facts in the Complaint and make all reasonable inferences in favor of the plaintiff. *Iqbal*, 556 U.S. at 676–79; *Kensington*, 684 F.3d at 467. In the Complaint, International describes itself as "a religious organization that exists for the purpose of preserving and promoting the Hindu faith." (Compl. ¶ 1.) It asserts that "[a]s part of its mission, beginning in 2017, [International] undertook to develop a spiritual and cultural retreat center in Virginia known as Devasya." (*Id.*) It further details its meetings with Atane employees as International and Atane worked to begin construction on Devasya. (*See, e.g., id.* ¶¶ 13, 20.) Because the well-pleaded factual allegations in the Complaint show that Devasya constitutes the name of the project itself and not a separate entity at the time of the Letter Agreement, the Court will not consider it as an entity separate from International. Therefore, at this stage of the litigation, the Court will presume that Devasya could not have entered into a contract with Atane.[10] Rather, the

---

[9] In its Reply to the Motion to Dismiss, Atane appears to argue that the Court must rely solely on the Letter Agreement and not consider the allegations in the Complaint. (Reply Mot. Dismiss 2–4, ECF No. 14.) However, "[a] motion to dismiss under Rule 12(b)(6) tests the sufficiency of a Complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C.*, 980 F.2d at 952 (citations omitted). The Court must consider the allegations in the Complaint and the attached exhibits to determine whether International has stated a claim upon which the Court can grant relief. While the Court concludes that International has done so, at this early stage, the Court makes no determination as to whether International's claims can survive under a more stringent standard of review applicable at a later stage of the litigation.

[10] In its Response to the Motion to Dismiss, International asserts that on June 13, 2018, a "Virginia corporation named Devasya was incorporated with the Virginia State Corporation

8

Court will draw the reasonable inference that International constitutes a party to the Letter Agreement. *See Kensington*, 684 F.3d at 467 (stating that the Court "'must accept as true all of the factual allegations contained in the Complaint' and 'draw all reasonable inferences in favor of the plaintiff'" (quoting *Kolon Indus.*, 637 F.3d at 440)).

Second, the signatories to the Letter Agreement[11] further demonstrate that Atane and International intended to contract with one another when signing the Letter Agreement. (*See* Letter Agreement 9.) In the Complaint, International plainly asserts that it entered into the contract with AEI "on or around March 23, 2018" and it relies on the Letter Agreement, attached as an exhibit to the Complaint, to plausibly state its allegations against Atane.[12] (Compl. ¶ 4; *see*

---

Commission." (Resp. Mot. Dismiss 4 n.1, ECF No. 13.) International did not include this fact in its Complaint. "[I]t is axiomatic that [a] complaint may not be amended by the briefs in opposition to a motion to dismiss," *Mylan Labs, Inc. v. Akzo, N.V.*, 770 F. Supp. 1053, 1068 (D. Md. 1991) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)). The Court will not consider this new factual allegation when deciding the Motion to Dismiss. However, if the Court were to consider this fact, it would lend further support to the Court's conclusion that International constitutes a party to the Letter Agreement.

[11] The Court "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396–97 (4th Cir. 2006) ("[A] court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint [without converting a Rule 12(b)(6) motion into one for summary judgment] so long as the authenticity of these documents is not disputed."). These "documents" include those attached to the Complaint as exhibits. *See* Fed. R. Civ. P. 10(c) ("A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion. A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). International attached two exhibits to the Complaint: (1) the Letter Agreement; and, (2) the Termination Letter. Because the Court "must consider the complaint in its entirety," and the Letter Agreement affects the Court's decision, the Court will evaluate the Letter Agreement in deciding the Motion to Dismiss. *See Tellabs*, 551 U.S. at 322. Atane does not dispute the authenticity of the attached exhibits.

[12] Relying on the exhibit prevails rule, Atane challenges International's reliance on the exhibits attached to the Complaint by asserting that "the Court 'is not required to accept as true

Letter Agreement 1.) The Letter Agreement shows that Ankit Patel, International's Executive Director, signed the Letter Agreement on behalf of International. (*See* Letter Agreement 9.) This signature indicates, or at least allows the Court to draw a reasonable inference, that International constitutes a party to the contract with Atane. See *Kensington*, 684 F.3d at 467.

Finally, under Virginia law, the mere reference to Devasya throughout the Letter Agreement does not preclude International from being a party to the Letter Agreement. Under Virginia case law "a misnomer in a corporate name does not invalidate a contract when it is clear what corporation the parties intended . . . ." *Blueridge General, Inc.*, 85 Va. Cir. at 2 (quoting *Lataif*, 223 Va. 59). "The misnomer of a corporation does not affect the validity of a contract made by it. Similarly, where the name or description is erroneous but there is no reasonable doubt as to the person who was intended to be named or described, the mistake will not defeat a bequest." 4B M.J. Corporations § 37 (LEXIS). Although the body of the Letter Agreement refers only to Devasya, the well-pleaded factual allegations in the Complaint and the signatures found on the Letter Agreement allow the Court to draw the reasonable inference that

---

conclusions or inferences from the Complaint which contradict the attached exhibits.'" (Reply Mot. Dismiss 3.)
  The exhibit prevails rule states that if a plaintiff "attaches documents and *relies upon the documents to form the basis for a claim or part of a claim,* dismissal is appropriate if the document negates the claim." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (emphasis added) (quoting *Thompson v. Ill. Dep't Prof'l Regulation*, 300 F.3d 750, 754 (7th Cir. 2002)).
  This rule does not affect the outcome of this matter because International's Complaint and the exhibits attached to the Complaint, specifically the Letter Agreement, do not contradict one another. Here, the Complaint alleges that a contract existed between Atane and International, and the Letter Agreement supports that inference. Specifically, Ankit Patel's signature formalizing the Letter Agreement shows that he signed the Letter Agreement on behalf of International, not Devasya. (*See* Compl.; Letter Agreement 9.)
  Because it post-dates the Letter Agreement, the fact that the Termination Letter appears to have been sent on behalf of Devasya does not affect the Court's analysis at this early stage of the litigation.

10

Case 3:19-cv-00744-MHL Document 15 Filed 07/23/20 Page 11 of 11 PageID# 108

International and Atane were the parties to the Letter Agreement at the time they signed it. (*Id.* 9.) And while Atane contends that International was not a party to the Letter Agreement, this Court, in the Motion to Dismiss, finds otherwise. *See Blueridge General, Inc.*, 85 Va. Cir. at 2.

Because International constitutes a party to the contract, the Court will deny the Motion to Dismiss.

### IV. Conclusion

For the foregoing reasons, the Court will deny the Motion to Dismiss. (ECF No. 11.) The Court will order Atane to file a response to the Complaint in accordance with the Federal Rules of Civil Procedure and the Local Rules for the United States District Court for the Eastern District of Virginia.

An appropriate order shall issue.

/s/
M. Hannah Lauck
United States District Judge

Date: 7/23/2020
Richmond, Virginia